David B. MILES, Jr., Plaintiff,

v.

Kenneth S. APFEL, Commissioner of Social Security, Defendant.

No. CV 98–0360.

United States District Court, E.D. New York.

June 16, 1999.

Nassau/Suffolk Law Services Committee, Inc. by Candace Scott Appleton, Hempstead, NY, for Plaintiff.

Zachary W. Carter, United States Attorney by Kevin P. Mulry, Assistant U.S. Attorney, Brooklyn, NY, for Defendant.

## MEMORANDUM AND ORDER

WEXLER, District Judge.

Plaintiff seeks judicial review, pursuant to Section 205(g) of the Social Security Act (the "Act"), 42 U.S.C. § 405(g), of a final determination of the Commissioner of Social Security (the "Commissioner") denying his application for disability insurance benefits. Plaintiff seeks a remand to the Commissioner to consider new evidence and a re-opening of an unappealed prior determination denying plaintiff SSI benefits. In the alternative, plaintiff seeks judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). Defendant moves for judgment on the pleadings. The issues before the Court are whether remand for further proceedings is appropriate or, in the alternative, whether a motion for judgment on the pleadings should be granted. For the reasons discussed below, this case is remanded to the Commissioner for proceedings consistent with this opinion.

## BACKGROUND

### I. Procedural History

Plaintiff applied for Supplemental Security Income ("SSI") benefits on June 6, 1994, claiming a period of disability beginning on May 26, 1994. The Social Security Administration ("SSA") denied plaintiff's application on January 17, 1995 and plaintiff failed to ask for reconsideration. Thereafter, on July 12, 1995, plaintiff reapplied for SSI benefits, alleging a period of disability beginning on May 2, 1995. This application was denied initially and upon reconsideration. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") which was held on March 6, 1996. In a decision dated March 18, 1996, the ALJ concluded that plaintiff was not disabled within the meaning of the Act.

Plaintiff appealed the decision of the ALJ and on November 19, 1997, the Appeals Council concluded there was no basis for granting plaintiff's request for review. Because the Appeals Council declined to review the ALJ's determination, that determination became the final decision of the Commissioner. *Perez v. Chater*, 77 F.3d 41. 44 (2d Cir.1996).

### II. Plaintiff's Impairments

Plaintiff seeks SSI benefits primarily because of his limited mental capacity, which plaintiff's counsel refers to as "mental re-

tardation," and defense counsel characterizes as a "learning disability." Whatever label is applied, it is clear that plaintiff's I.Q. level is in the 60's and that results of intelligence testing place plaintiff in the first percentile in national ranking. Thus, plaintiff scored lower on an intelligence test than ninety-nine percent of the population.

### III. The Administrative Record

#### A. Medical Evidence of Mental Impairment

Because there is no treatment for Plaintiff's low I.Q., it is not surprising that the medical evidence relevant to plaintiff's medical condition consisted solely of the results of consultative examinations. Dr. Joseph Andrews administered an intelligence test known as the Wechsler Adult Intelligence Scale–Revised on November 12, 1994. Plaintiff's overall performance on this test was 67, which places plaintiff in the "mentally deficient" range of intelligence. As noted, this score places plaintiff in the first percentile of national ranking. Plaintiff was also examined by Dr. Ronald Chase, a psychiatrist, on August 24, 1995. Dr. Chase found that plaintiff's intellectual functioning was "borderline" and recommended assistance for the development of better reading and mathematics skills, but did not diagnose plaintiff as suffering from any psychiatric illness.

#### B. Medical Evidence of Physical Impairment

The sole physical impairment for which there was evidence presented to the ALJ was the report of Dr. Dutta, who examined plaintiff consultatively with respect to a predominantly healed fracture of the right hand. Dr. Dutta confirmed that plaintiff suffered from some residual restricted motion, stiffness and pain as a result of this injury.

### C. Non–Medical/Vocational Evidence

Because Plaintiff has never been employed, no evidence of prior employment was presented to the ALJ. Evidence of plaintiff's daily activities included the facts that plaintiff, who was twenty-one years old at the time of the hearing, resides with his grandparents. Plaintiff testified as to his inability to follow instructions and difficulty reading. Plaintiff has never had a driver's license. He testified that he was capable of taking public transportation, but only if a someone wrote down specific directions for him to hand to the bus driver. Plaintiff testified that he watches television and likes to read comic books. His chores at home include helping with housework and taking out the garbage.

### IV. The ALJ's Decision

The ALJ noted that plaintiff had not engaged in substantial gainful activity since the date that he filed his application for disability benefits. He further found that plaintiff's impairments namely, his mental impairment and his right wrist fracture, limit plaintiff's ability to carry out certain forms of work. However, the ALJ also found that plaintiff's impairments did not meet or equal in severity and duration any impairment listed in the Listing of Impairments, Appendix I, Subpart P, Part 404 of the Regulations of the SSA, 20 C.F.R. § 416.920(d) ("Appendix I").

With respect to plaintiff's mental impairment, the ALJ noted plaintiff's low I.Q. score, but found that plaintiff did not have another additional impairment imposing additional and significant work-related limitation of function and therefore was not disabled within the parameters established by Section 12.05C of Appendix 1.[1]

The ALJ then went on to consider plaintiff's residual functional capacity ("RFC")

---

1. Section 12.05C of Appendix I provides for a finding of disability when a claimant has a valid verbal, performance or full scale I.Q. of 60 through 70 and a physical or other mental impairment imposing additional and significant work-related limitation of function. 20 C.F.R Pt. 404, Subpt. P.App. I § 12.05C.

and found that he retained the RFC to perform light and sedentary unskilled work. Thus, the ALJ concluded that plaintiff had the capacity to engage in approximately 2,600 occupations that require no special skills or experience, require little or no judgment and can be learned on the job in a short period of time. Accordingly, it was the opinion of the ALJ, in an opinion dated March 18, 1996, that plaintiff was not disabled within the meaning of the Act and therefore was not eligible for SSI benefits.

## V. *Action of the Appeals Council*

The Appeals Council considered plaintiff's request for review of the opinion of the ALJ and on November 19, 1997, denied the request for review.

## *DISCUSSION*

### I. *Applicable Law*

#### A. *Standard of Review*

The Court may set aside a final decision of the Commissioner only if it is not supported by substantial evidence or is based upon an erroneous legal standard. *Berry v. Schweiker,* 675 F.2d 464, 467 (2d Cir.1982). Substantial evidence is "more than a mere scintilla, and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perez v. Chater,* 77 F.3d 41, 46 (2d Cir.1996) (quoting *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971)). The reviewing court does not conduct a de novo review as to whether the claimant is disabled, *Parker v. Harris,* 626 F.2d 225, 231 (2d Cir.1980), nor may it substitute its own judgment for that of the Commissioner. *Jones v. Sullivan,* 949 F.2d 57, 59 (2d Cir.1991); *Valente v. Secretary of Health and Human Servs.,* 733 F.2d 1037, 1041 (2d Cir.1984). When the Commissioner's decision is not supported by substantial evidence, a reviewing court must reverse the administrative decision because "the entire thrust of judicial review under the disability benefits law is to insure a just and rational result between the government and a claimant...." *Williams v. Bowen,* 859 F.2d 255, 258 (2d Cir.1988).

#### B. *The Commissioner's Procedure for Evaluating Disability Claims*

Claims of disability are reviewed pursuant to a five step process. 20 CFR § 404.1520. The first step is the determination of whether the claimant is employed. The second step of the disability evaluation is the determination of whether the claimant has a "severe impairment." Once a severe impairment is established, the Commissioner determines whether the impairment is one of the impairments listed in Appendix I of the Social Security Regulations. If the claimant suffers from such an impairment, a finding of disability follows.

With respect to mental impairments, in order to meet the mental impairment listed in section 12.05 of Appendix I, an I.Q. such as plaintiff's must be coupled with another significant physical impairment to lead to a finding of disability. In the absence of such a physical impairment, the Commissioner proceeds to the fourth step of the disability determination. That step involves the determination of whether the claimant possesses the residual functional capacity to perform past relevant work. *Perez,* 77 F.3d at 46. If the claimant cannot perform past relevant work, the burden then shifts to the Commissioner to prove that the claimant possesses the RFC to perform other work. *Perez,* 77 F.3d at 46. Where a claimant has multiple impairments, the Commissioner must consider the combined effect of those impairments in determining the claimant's ability to work. *Dixon v. Shalala,* 54 F.3d 1019, 1031 (2d Cir.1995).

#### C. *Standard For Remand To Consider New Evidence*

A court may order remand to the Commissioner to consider new evidence if

the new evidence is material and there exists good cause to excuse the failure to introduce the proffered evidence at the original proceeding. 42 U.S.C. § 405(g); *Tirado v. Bowen,* 842 F.2d 595, 597 (2d Cir.1988). For evidence to be considered new it must be not merely cumulative of what is already in the record. *Id.* at 597. Materiality exists if the evidence is "both relevant to the claimant's condition during the time period for which benefits were denied and probative." *Id.* Finally, as noted above, the claimant must establish good cause for the failure to introduce the evidence at an earlier stage of the proceedings. *Id.*

## II. *Analysis*

### A. *Propriety of Remand*

Plaintiff seeks remand to have the Commissioner consider medical records concerning plaintiff's heart condition. Specifically, plaintiff suffers from an ailment known as "Wolff–Parkinson–White Conduction Disorder." Individuals suffering from this disorder experience, *inter alia,* sharp spasms or convulsions and rapid heart beat. Plaintiff states that this medical evidence, which was in existence during the administrative proceedings, was not presented because plaintiff failed to bring it to the attention of his counsel.

It is explained that plaintiff's low I.Q. led him to the erroneous belief that only records relating to plaintiff's mental retardation were germane to his application for benefits. Thus, he failed to discuss his heart condition with counsel. It was not until plaintiff's hospitalization for a cardiac catheterization in December of 1996 (after the decision of the ALJ and the Appeals Council) that plaintiff mentioned his heart condition to counsel.

■ Applying the principles referred to above regarding the propriety of remand for consideration of previously unsubmitted evidence, the court holds that this is an appropriate case for remand. First, the evidence, which has never before been pre-sented to the Commissioner, is not cumulative and is therefore new to plaintiff's claim. The materiality of the evidence concerning plaintiff's heart condition is clear. The proffered evidence may very well constitute the additional significant physical disability that would result in a finding of disability within the meaning of Section 12.05C of Appendix I. Finally, there is no question that good cause exists for the failure to present this evidence earlier. Clearly, plaintiff's low I.Q. hindered his ability to determine what was relevant to his claim. He should not be penalized for having failed to submit evidence regarding his heart condition at an earlier stage of the proceedings.

### B. *Reopening of Prior Proceeding*

■ It is the policy of the Social Security Administration that determinations are final if they are not appealed within sixty days of decision. The regulations of the Commissioner, however, allow for the reopening of a decision within twelve months of the decision for any reason. Decisions may be re-opened within two years of determination for "good cause" and may be re-opened at any time if obtained by fraud or similar fault. 20 C.F.R. § 416.1488. Plaintiff's second application for benefits, which is the subject of this opinion, was commenced within twelve months of the Commissioner's denial of the first application and falls within the time period referred to in the regulation that allow for re-opening of a decision for any reason.

Even if the regulation were not sufficient to allow for re-opening of plaintiff's initial claim, Social Security Ruling 91–5 provides an additional basis for re-opening the initial adverse determination. That ruling clarifies a policy regarding missed deadlines by claimants of limited intellectual capacity. Pursuant to Ruling 91–5, a claimant may establish good cause for having missed a deadline when he has a mental condition that limits his ability to do things for himself and was unrepresented

by counsel at the time of the missed deadline.

At the time of plaintiff's initial disability application he was unrepresented by counsel. Not surprisingly, plaintiff's low I.Q. is responsible for his failure to timely appeal the original decision and for his mistaken belief that he should reapply for benefits after six months, rather than embark upon the appeals process. Under these circumstances, the court holds that it is appropriate for the Commissioner, upon remand, to re-open plaintiff's initial claim for benefits.

## CONCLUSION

For the foregoing reasons the court holds that this matter should be remanded to the Commissioner to consider evidence regarding plaintiff's heart condition. The court makes no rulings at this time concerning issues, other than remand, referred to in the parties' memoranda of law. The court further holds that it is appropriate, upon remand, for the Commissioner to reopen plaintiff's initial application for benefits that was decided six months prior to the present application. For these reasons, the Commissioner's motion is denied, plaintiff's cross-motion is granted insofar as it seeks a remand to the Commissioner, and this case is remanded to the Commissioner for further proceedings consistent with this opinion. The Clerk of the Court is directed to close the case.

SO ORDERED.